UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

C.X.A. a minor, by K. German,

      Plaintiff,      5:17-CV-0879
               (WBC)
v.

COMMISSIONER OF SOCIAL SECURITY

      Defendant.
_____

APPEARANCES:           OF COUNSEL:

OLINSKY LAW GROUP       HOWARD OLINSKY, ESQ.
 Counsel for Plaintiff
300 S. State St., Ste. 410
Syracuse, NY 13202

U.S. SOCIAL SECURITY ADMIN.    JASON PECK, ESQ.
OFFICE OF REG'L GEN. COUNSEL-REGION II
 Counsel for Defendant
26 Federal Plaza - Room 3904
New York, NY 10278

William B. Mitchell Carter, U.S. Magistrate Judge,

## MEMORANDUM-DECISION and ORDER

   This matter was referred to me, for all proceedings and entry of a final judgment, pursuant to the Social Security Pilot Program, N.D.N.Y. General Order No. 18, and in accordance with the provisions of 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, N.D.N.Y. Local Rule 73.1 and the consent of the parties. (Dkt. Nos. 4, 6.)

   Currently before the Court, in this Social Security action filed by K. German ("Plaintiff") on behalf of her minor son, C.X.A. ("Claimant") against the Commissioner of Social Security ("Defendant" or "the Commissioner") pursuant to 42 U.S.C. § 405(g), are

the parties' cross-motions for judgment on the pleadings. (Dkt. Nos. 9, 10.) For the reasons set forth below, Plaintiff's motion is granted, to the extent that it seeks remand for further proceeding under Sentence Four of 42 U.S.C. § 405(g), and Defendant's motion is denied.

**I.    RELEVANT BACKGROUND**

**A.    Factual Background**

At the time of filing Claimant was a school aged child and at the time of his hearing Claimant was an adolescent. (T. 13); 20 C.F.R. § 416.926a(g)(2). Claimant's alleged disability consists attention deficit hyperactivity disorder ("ADHD"), adjustment disorder with emotion reaction, and developmental disorders. (T. 237.)

**B.    Procedural History**

On March 20, 2014, Plaintiff applied for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act on Claimant's behalf. (T. 109.) Plaintiff's application was initially denied, after which she timely requested a hearing before an Administrative Law Judge ("the ALJ"). On January 26, 2016, Plaintiff appeared before the ALJ, Elizabeth W. Koennecke. (T. 51-65.) On March 31, 2016, ALJ Koennecke issued a written decision finding Claimant not disabled under the Social Security Act. (T. 7-39.) On June 12, 2017, the Appeals Council ("AC") denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (T. 1-6.) Thereafter, Plaintiff timely sought judicial review in this Court.

**C.    The ALJ's Decision**

Generally, in her decision, the ALJ made the following findings of fact and conclusions of law. First, the ALJ found Claimant was a "school aged child" at the time

2

of filing and an "adolescent" the time of the hearing pursuant to 20 C.F.R. § 416.926a(g)(2). (T. 13.) Second, the ALJ found Claimant had not engaged in substantial gainful activity since the application date. (*Id.*) Third, the ALJ found Claimant suffered from the severe impairments of a mental impairment variously characterized as ADHD, oppositional defiant disorder ("ODD"), and learning disorder. (*Id.*) Fourth, the ALJ found Claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix I ("the Listings"). (T. 16.) Fifth, the ALJ found Claimant did not have an impairment or combination of impairments that functionally equaled an impairment set forth in the Listings. (T. 18-35.) Sixth, and finally, the ALJ concluded Claimant had not been disabled, as defined by the Social Security Act, since March 20, 2014, the date his application was filed. (T. 35.)

## II.  THE PARTIES' BRIEFINGS

### A.  Plaintiff's Arguments

Generally, in support of her motion for judgment on the pleadings, Plaintiff makes one argument. Plaintiff argues the ALJ's determination, that Claimant had less than a marked limitation in the domain of acquiring and using information, is not supported by substantial evidence. (Dkt. No. 9 at 10-19 [Pl.'s Mem. of Law].)

### B.  Defendant's Argument

Generally, in support of her cross-motion for judgment on the pleadings, Defendant makes one argument. Defendant argues substantial evidence supported the ALJ's finding that Claimant had a less than marked limitations in the domain of acquiring and using information. (Dkt. No. 10 at 8-12 [Def.'s Mem. of Law].)

## III. RELEVANT LEGAL STANDARD

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *see Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

An individual under the age of eighteen (18) is disabled, and thus eligible for SSI benefits, if he or she has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. *See* 42 U.S.C. § 1382c(a)(3)(C)(i). However, that definitional provision excludes from coverage any "individual under the age of [eighteen] who engages in substantial gainful activity...." 42 U.S.C. § 1382c(a)(3)(C)(ii).

By regulation, the agency has prescribed a three-step evaluative process to be employed in determining whether a child can meet the statutory definition of disability. *See* 20 C.F.R. § 416.924; *Kittles v. Barnhart*, 245 F. Supp. 2d 479, 487-88 (E.D.N.Y. 2003); *Ramos v. Barnhart*, No. 02-CV-3127, 2003 WL 21032012, at *7 (S.D.N.Y. May 6, 2003).

The first step of the test, which bears some similarity to the familiar five-step analysis employed in adult disability cases, requires a determination of whether the child has engaged in substantial gainful activity. *See* 20 C.F.R. § 416.924(b); *Kittles*,

5

245 F. Supp. 2d at 488. If so, then both statutorily and by regulation the child is ineligible for SSI benefits. *See* 42 U.S.C. § 1382c(a)(3)(C)(ii); 20 C.F.R. § 416.924(b).

If the child has not engaged in substantial gainful activity, the second step of the test next requires examination of whether the child suffers from one or more medically determinable impairments that, either singly or in combination, are properly regarded as severe, in that they cause more than a minimal functional limitation. *See* 20 C.F.R. § 416.924(c); *Kittles*, 245 F. Supp. 2d at 488; *Ramos*, 2003 WL 21032012, at *7. In essence, "a child is [disabled under the Social Security Act] if his impairment is as severe as one that would prevent an adult from working." *Zebley v. Sullivan*, 493 U.S. 521, 529, 110 S. Ct. 885, 890 (1990).

If the existence of a severe impairment is discerned, the agency must then determine, at the third step, whether it meets or equals a presumptively disabling condition identified in the listing of impairments set forth under 20 C.F.R. Pt. 404, Subpt. P., App. 1 (the "Listings"). *Id.* Equivalence to a listing can be either medical or functional. *See* 20 C.F.R. § 416.924(d); *Kittles*, 245 F. Supp. 2d at 488; *Ramos*, 2003 WL 21032012, at *7. If an impairment is found to meet, or qualify as medically or functionally equivalent to, a listed disability and the twelve-month durational requirement is satisfied, the child will be deemed disabled. *See* 20 C.F.R. § 416.924(d)(1); *Ramos*, 2003 WL 21032012, at *8.

Analysis of functionality is informed by consideration of how a child functions in six main areas referred to as "domains." 20 C.F.R. § 416.926a(b)(1); *Ramos*, 2003 WL 21032012, at *8. The domains are described as "broad areas of functioning intended to capture all of what a child can or cannot do." 20 C.F.R. § 416.926a(b)(1). Those

domains include: (i) [a]cquiring and using information; (ii) [a]ttending and completing tasks; (iii) [i]nteracting and relating with others; (iv) [m]oving about and manipulating objects; (v) [c]aring for [oneself]; and (vi) [h]ealth and physical well-being. *See id.*

Functional equivalence is established in the event of a finding of an "extreme" limitation, meaning "more than marked," in a single domain. 20 C.F.R. § 416.926a(a); *Ramos*, 2003 WL 21032012, at *8. An "extreme limitation" is an impairment which "interferes very seriously with [the child's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3)(I).

Alternatively, a finding of disability is warranted if a "marked" limitation is found in any two of the listed domains. 20 C.F.R. § 416.926a(a); *Ramos*, 2003 WL 21032012, at *8. A "marked limitation" exists when the impairment "interferes seriously with [the child's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(i). "A marked limitation may arise when several activities or functions are impaired, or even when only one is impaired, as long as the degree of limitation is such as to interfere seriously with the ability to function (based upon age-appropriate expectations) independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 112.00(C).

**IV. ANALYSIS**

In the domain of acquiring and using information, the ALJ considers how well Claimant acquires or learns information, and how well Claimant uses the information he has learned. 20 C.F.R. § 416.926a(g); SSR 09-3p. A school-aged child, like Claimant at the time of filing, should be able to learn to read, write, and do math, and discuss history and science. 20 C.F.R. § 416.926a(g )(iv). A school aged child needs to use

7

these skills in academic situations to demonstrate what he has learned and should also use these skills in daily living situations at home and in the community. *Id.* A school aged child should be able to use increasingly complex language to share information and ideas with individuals or groups, by asking questions and expressing her ideas, and by understanding and responding to the opinions of others. *Id.* An adolescent, like Claimant at the time of the hearing, should be able to use what he has learned in daily living situations without assistance, comprehend and express both simple and complex ideas, and should learn to apply these skills in practical ways that will help him enter the workplace after he finishes school. 20 C.F.R. § 416.926a(g)(v); SSR 09-3p.

On May 6, 2014, non-examining State agency medical consultant P. Ude, reviewed the record and provided an opinion. (T. 110-117.)[1] In the domain of acquiring and using information, Dr. Ude opined Claimant had a marked limitation. (T. 113.) Dr. Ude stated his opinion was based on Claimant's classification as "other health impaired" by the school district, he received resource room assistance, and IQ scores of 75 and 69. (*Id.*)

On February 10, 2016, Claimant's reading teacher, Andrew Davis, completed a questionnaire. (T. 321-327.) In the domain of acquiring and using information Mr. Davis indicated Claimant had "a very serious problem" reading and comprehending written material. (T. 321.) He opined Claimant had "an obvious problem": understanding school and content vocabulary; providing organized oral explanations and adequate descriptions; expressing ideas in written form; learning new material; recalling and applying previously learned material; and applying problem-solving skills in

---

[1] P. Ude's signature contains the medical code "32" which corresponds to the specialty pediatrics. POMS DI 24501.004 Medical Specialty Codes.

class discussions. (T. 321-322.) Mr. Davis wrote "[i]t is difficult to get an accurate idea of [Claimant's] deficits as he spends much of the class time either listening to music, fighting with other students, or skipping class. I believe his reading level would be higher if he would stay in reading intervention class." (T. 322.)

School records indicated Claimant's reading level was well below grade level. New York State test results for the school year 2013/2014 showed Claimant was "not meeting learning standards" in English, math, and science. (T. 312.) In 2014, when Claimant was in 5th grade, testing indicated he read at a 2.25 grade level. (T. 299.) The teacher questionnaire completed during Claimant's 7th grade year indicated Claimant was reading at a 2.2 grade level. (T. 321.) Claimant's IEP for school year 2014/2015 stated Claimant's reading was "significantly below level." (T. 259.)

A Psychological Report completed by psychologist Carrie Yaus in May of 2015 indicated Claimant was performing well below grade level in all subject areas. (T. 372.) Specifically, Claimant was reading at a 2.4 grade level. (*Id.*) Ms. Yaus stated Claimant's "reading skills are estimated to fall at the mid-2nd grade level, currently, with little or no growth suggested when 2012 and current scores are compared." (*Id.*) Ms. Yaus stated Claimant had "weak visual scanning skills" and "struggles to understand 1st-2nd grade level material, primarily due to limited word recognition skills which impact both fluency and comprehension." (*Id.*) She further stated Claimant's attention to tasks, impulsivity and weak visual recall and analysis abilities were believed to contribute to his reading difficulties. (*Id.*)

On May 1, 2014, consultative examiner, Jeanne Shapiro, Ph.D. performed a psychiatric examination, an intelligence evaluation, and provided a medical source

9

statement. (T. 334-344.) Dr. Shapiro opined Claimant had no limitations understanding and following simple instructions and directions; he had no limitations performing simple tasks; he had mild-moderate limitations performing age appropriate complex tasks; he had mild limitations maintaining attention and concentration; he had mild limitations in his ability to learn new tasks; he had mild-moderate limitation in his ability to make age appropriate decisions; he had mild-moderate limitations in his ability to consistently relate to and interact well with others; and he had mild-moderate limitations regarding his ability to deal with stress. (T. 337, 343.) Dr. Shapiro administered a standardized intelligence test (WISC-IV). (T. 341.) Dr. Shapiro noted Claimant had taken his medication on the day of the evaluation. (*Id.*) Claimant's full scale IQ was 69. (*Id.*) Reading testing showed Claimant read at a 1.7 grade level. (T. 343.)

The ALJ determined Claimant had a "less than marked" limitation in the domain of acquiring and using information. (T. 23.) Although the State agency medical consultant determined Claimant had a marked limitation in this domain, the ALJ concluded the evidence in the record did not support this finding. (*Id.*) The ALJ discussed Claimant's academic record, but concluded Claimant's lack of academic success was due to poor medication management and not serious intellectual deficits. (T. 24.) The ALJ further noted Claimant did not have to repeat any grades; Claimant's mother indicated he could read simple words, identify letters, print his name, print some letters, and identify the days of the week/months; and Claimant was able to understand instructions to complete a spirometry and sleep study testing. (*Id.*) The ALJ further reasoned Claimant did not have speech or language delays; was able to partake in many activities of daily living; and could care for his own hygiene. (*Id.*)

The ALJ afforded the opinion of consultative examiner, Jeanne Shapiro, Ph.D., "great weight." (T. 24.) Namely, the ALJ relied on Dr. Shapiro's opinion that Claimant had mild-moderate limitations performing age-appropriate activities and had no more than mild limitations regarding his ability to learn new tasks and no limitation in understanding simple instructions and directions. (T. 24-25.) The ALJ afforded "little weight" to the statement provided by Mr. Davis. (T. 25.) The ALJ stated Mr. Davis's conclusions were not well supported by "the few chronically positive clinical findings noted on mental status exams of the claimant by the treating and examining sources." (*Id.*)

Here, remand is necessary for the ALJ to assess Claimant's limitations in the domain of acquiring and using information. Overall, the ALJ improperly reasoned Claimant's deficits in this area were due solely to symptoms of ADHD and poor medical compliance and the ALJ failed to discuss relevant evidence in the record concerning this domain. (T. 24.)

First, the ALJ erred in her evaluation of Mr. Davis's statement. The ALJ discounted Mr. Davis's assessment of Claimant's serious and very serious problems in this domain because they were not supported by the chronically positive clinical findings of treating providers and Dr. Shapiro. (T. 21.) However, it is unclear how Mr. Davis's statement, that Claimant had a "very serious problem in reading and comprehending written material" was undermined by "positive clinical findings." The objective medical evidence in the record, as outlined above, consistently indicated Claimant's reading level was significantly below grade level despite such "positive clinical findings."

Second, the ALJ improperly concluded Claimant's testing results were due to ADHD symptomology and not intellectual limitations. The ALJ relied heavily on Mr. Davis's statement that it was difficult to get an accurate picture of Claimant's deficits because of behavioral issues. (T. 24.) The ALJ further stated Claimant's low IQ scores "appear widely variable and are more consistent with limitations related to ADHD that has responded to appropriate levels of medication versus any significant intellectual deficits." (T. 24.) Although Claimant's IQ testing results may be skewed due to inattentive behavior, the record, as outlined above, indicated Claimant was reading well below read level since he was first tested. As of the 7th grade, Claimant's reading level was still around 2nd grade. In addition, Ms. Yaus specifically stated most of Claimant's behavioral issues were related to his skill deficit. (T. 370.) Ms. Yaus also noted that "[t]he impact of behaviors associated with ADHD is evident in current test results but achievement test results are felt to accurately estimate [Claimant's] functional skill level." (T. 371.) In making her determination, the ALJ failed to discuss Ms. Yaus's opinion that despite ADHD symptomology, Claimant's test results were an accurate estimate of his skill level.

To be sure, the ALJ is "not required to discuss in depth every piece of evidence contained in the record, so long [as] the evidence of record permits the Court to glean the rationale of an ALJ's decision." *LaRock ex. rel. M.K. v. Astrue,* No. 10–CV–1019, 2011 WL 1882292, *7 (N.D.N.Y. Apr. 29, 2011) (citing *Mongeur v. Heckler,* 722 F.2d 1033, 1040 (2d Cir.1983) (internal quotation marks omitted)). However, the ALJ did not discuss Ms. Yaus's statements in concluding Claimant had a less than marked limitation in this domain. Ms. Yaus's statements regarding the impact of Claimant's ADHD

symptoms and overall testing results directly contradicts the ALJ's assertion. Therefore, remand is necessary for the ALJ to assess Ms. Yaus's statements in context of Claimant's testing results.

Further, the ALJ relied heavily on Claimant's lack of medication compliance in making her determination that Claimant had less than marked limitations in this domain. To be sure, the record contains treatment notations indicating Claimant was not adhering to his medication routine. For example, treatment notations dated April 3, 2014 stated Claimant had not been seen since August 2014 and although Plaintiff stated she had been giving Claimant his medication "the math [did not] add up." (T. 400.) Notations dated October 22, 2014, stated Claimant's ADHD was "poorly controlled . . . likely because he has largely not received the medication over the past six months." (T. 388.) However, treatment notations dated July 22, 2015, indicated Claimant has "been following up more frequently" with his medication. (T. 375.)

The ALJ stated Claimant had a "gap" in treatment between August 2015 and January 2016, the hearing date. (T. 22.) The ALJ stated Mr. Davis's statement was provided during this gap, thus implying Claimant was not receiving treatment and/or medication at that time. (*Id.*) Treatment notes from July 22, 2015 were the last treatment notations in the record pertaining to Claimant's ADHD. (T. 375.) There was no indication from the July 2015 treatment notations that Claimant was being discharged from treatment. (*Id.*)[2] The July 2015 notation stated Claimant was going out of town for the summer and Plaintiff planned to continue with medication. (*Id.*) At the hearing in January 2016, Plaintiff testified that Claimant was on medication for his

---

[2] Of note, the treatment notes provided by Claimant's treating sources were stamped "generated on December 28, 2015" which indicates the notations were updated through that date. (T. 375-377.)

ADHD, that the current dose was not working, and she spoke to Claimant's doctors about changing the dosage. (T. 77.) Remand is necessary to clarify whether or not there was a gap in treatment and/or medication or if the record was simply not updated.

Overall, remand for further proceedings is necessary for an evaluation of Claimant's limitation in the domain of acquiring and using information. The ALJ erred in her assessment of the opinion evidence in the record, specifically Mr. Davis's statement and Ms. Yaus's testing and result analysis, and the record requires clarification regarding Claimant's treatment and medication.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 9) is **GRANTED**; to the extent it seeks remand under Sentence Four of 42 U.S.C. § 405(g) and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 10) is **DENIED**; and it is further

**ORDERED** that this matter is **REMANDED** to Defendant, pursuant to 42 U.S.C. § 405(g), for further proceedings consistent with this Decision and Order.

Dated: July 16, 2018

*/s/ Bill Carter*
William B. Mitchell Carter
U.S. Magistrate Judge